UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENARD PETERSON (#347506),

                              CASE NO. 2:11-CV-15154

             Plaintiff,          JUDGE LAWRENCE P. ZATKOFF

                              MAGISTRATE JUDGE PAUL J. KOMIVES

v.

ERIC HALL,

             Defendant,

_____/

**REPORT AND RECOMMENDATION REGARDING
DEFENDANT HALL'S JANUARY 23, 2012 MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT Doc. Ent. 12)**

**I.      RECOMMENDATION:**  The Court should deny defendant Hall's January 23, 2012

motion to dismiss or, in the alternative, for summary judgment (Doc. Ent. 12), because plaintiff

has raised a genuine issue of material fact as to whether he should be excused from properly

exhausting his administrative remedies.

**II.     REPORT:**

**A.      Background**

Denard Peterson (#347506) is currently incarcerated at the Carson City Correctional

Facility (DRF), where he is serving a sentence imposed on May 31, 2001 for an October 16, 2000

offense of Mich. Comp. Laws § 750.250b(1)(c), Criminal Sexual Conduct, 1st Deg (During

Felony) in Case No. 01001261-01 (Wayne County Circuit Court).

At trial and sentencing, plaintiff was represented by attorney Robert Slameka (P20567).

Plaintiff claims he was represented by a different attorney on appeal.  According to Judge

Youngblood's chambers (Wayne County Circuit Court), plaintiff's appeal was denied on December 20, 2005.

On January 31, 2006, Judge Youngblood denied Peterson's motion for relief from judgment.[1]  The Michigan Court of Appeals dismissed Peterson's pro se June 2006 delayed application for leave to appeal on September 15, 2006 "for failure to pursue the case in conformity with the rules."  *See People v. Peterson*, Case No. 270841 (Mich. App.).[2]

On March 13, 2012, plaintiff filed a petition for writ of habeas corpus in the United States District Court for the  Eastern District of Michigan.  Therein, he alleges:

(1)    I was forced by attorney to sign plea agreement, which was not upheld.
(2)    I put in [a M.C.R. 6.500 ("Postappeal Relief") motion] around [March 1, 2010] for the first time and it was 6500 denied[.]
(3)    I never talked to appellate attorney[.]
(4)    They went out of my sentence guidelines without jury verdict.

Doc. Ent. 1 at 4-5 (Case No. 2:12-cv-11109-PJD-MJH).[3]

---

[1]M.C.R. 6.502 ("Motion for Relief from Judgment")

[2]On February 19, 2010, Judge Youngblood entered an opinion and order denying motion for production of DNA evidence, and, on August 11, 2011, Judge Youngblood entered an order dismissing motion for discovery.  Doc. Ent. 13 at 5-6.

[3]The statements in this section are derived from **(a)** www.michigan.gov/corrections, "Offender Search;" **(b)** the March 13, 2012 petition (Doc. Ent. 1) in Case No. 2:12-cv-11109-PJD-MJH (*Peterson v. Hock*); **(c)** plaintiff's January 24, 2012 filing (Doc. Ent. 13) in *Peterson v. Hall* (Case No. 2:11-cv-15154-LPZ-PJK); and **(d)** the docket of *People v. Peterson* (Case No. 270841, Mich. App.).

*I note that the items filed by plaintiff on January 24, 2012 (Doc. Ent. 13) in the instant civil rights matter (Case No. 2:11-cv-15154-LPZ-PJK) appear more suited to the petition for writ of habeas corpus plaintiff filed on March 13, 2012 (Case No. 2:12-cv-11109-PJD-MJH).  This is so, because the handwritten portion of this filing requests, among other things, "I am a mental patient [and was sentenced] without due process[,]" "I did not rape 73 year old Mary Hock[,]" "I never talked to appellate attorney," "[i]t took 7 [years] for me to get my pre-sentence report . . . that was the reason why the Court of Appeals dismissed my case[,]" "[s]o please help me appeal . . . and give me a[n] attorney[,]" etc. (Doc. Ent. 13 at 1-4), and several of the attached documents relate or appear to relate to Wayne County Case No. 01-001261-01 (Doc. Ent. 13 at 5-20).*

**B.      The Instant Complaint**

In the meantime, on November 22, 2011, while incarcerated at the MDOC's Gus Harrison Correctional Facility (ARF), Peterson filed this lawsuit against ARF Resident Unit Officer (RUO) Eric Hall.  Doc. Ent. 1; *see also* Doc. Ent. 12 at 6.  The facts underlying this complaint are based upon the events of July 26, 2011, when Peterson claims that Hall caused plaintiff's right hand to get trapped between the cell door and door track.  Doc. Ent. 1 at 3-4.

Peterson sues Hall in his personal and official capacities.  Doc. Ent. 1 at 2.  Peterson seeks punitive and nominal damages; however, his complaint is unsigned.  Doc. Ent. 1 at 5.  His application to proceed without prepayment of fees (Doc. Ent. 2) was granted on December 20, 2011 (Doc. Ent. 8).[4]

**C.      Pending Dispositive Motion**

On January 23, 2012, Hall filed a motion to dismiss, or in the alternative, for summary judgment.  Doc. Ent. 12.  Therein, Hall contends, "[p]laintiff's grievance regarding his Complaint allegations was rejected for being illegible."  Doc. Ent. 12 at 4.[5]

Ordinarily, Peterson's response to Hall's January 23, 2012 dispositive motion would have been due on or about February 16, 2012.  E.D. Mich. LR 7.1(e)(1)(B),[6] Fed. R. Civ. P. 6(d).

---

[4]Judge Zatkoff has referred this case to me for all pretrial matters.  Doc. Ent. 7.

[5]Attached to the motion are MDOC Policy Directive 03.02.130 (Doc. Ent. 12-2); Report of Step III Grievances (Doc. Ent. 12-3); Grievance Rejection (Doc. Ent. 12-4); Step II Prisoner Grievance Response (Doc. Ent. 12-5); Step III Grievance Appeal Determination (Doc. Ent. 12-6); and *Burnett v. Howard*, No. 2:09-cv-37, 2010 WL 1286256 (W.D. Mich. Mar. 30, 2010) (Doc. Ent. 12-7).  *See* Doc. Ent. 12-1 (List of Exhibits).

[6]"A response to a dispositive motion must be filed within 21 days after service of the motion."  E.D. Mich. LR 7.1(e)(1)(B).

3

However, Peterson filed a February 6, 2012 motion for a sixty (60) day enlargement of time to file a response (Doc. Ent. 14) on February 6, 2012.[7]

On February 14, 2012, I entered an order setting the response deadline for March 30, 2012.  Doc. Ent. 15.  On March 9, 2012, Peterson filed an affidavit (Doc. Ent. 16 at 1-2), a cover letter (Doc. Ent. 16 at 3), a response (Doc. Ent. 16 at 4-9) and a proof of service (Doc. Ent. 16 at 10).  Within his response, Peterson argues that defendant "is not entitled to dismissal or summary judgment[.]" Doc. Ent. 16 at 7-9.

Thereafter, on March 21, 2012, I entered an order (Doc. Ent. 17) deeming granted in part plaintiff's February 6, 2012 motion for enlargement of time to file response (Doc. Ent. 14) by way of my February 14, 2012 order (Doc Ent. 15).  Furthermore, I noted that the Court would recognize plaintiff's March 9, 2012 filing (Doc. Ent. 16 at 1-10) in its disposition of defendant's January 23, 2012 dispositive motion (Doc. Ent. 12).

**D.     Fed. R. Civ. P. 56 ("Summary Judgment")**

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

---

[7]According to plaintiff, he is in the Residential Treatment Program (RTP) as mentally ill. Doc. Ent. 14 at 2 ¶ 4.  He requests the additional time "to consult with the institutional Legal Writer Program to assist in filing a Response[.]" Doc. Ent. 14 at 2 ¶ 5.

In support of his request, plaintiff cites Fed. R. Civ. P. 6(b) ("Extending Time.") and W.D. Mich. LR 7.1(c) ("Modification of limits"), as well as *Johnson v. Harper*, 66 F.R.D. 103 (E.D. Tenn. 1975); *Rooks v. American Brass Co.*, 263 F.2d 166 (6th Cir. 1959); and *Schram v. O'Connor*, 2 F.R.D. 192 (E.D. Mich. 1941) (Picard, J.).  Doc. Ent. 14 at 5-6.  Plaintiff explains that the "unavailability of legal assistance at his present place of incarceration, the delay in obtaining photocopies only obtained from his Correctional Facility Administration, and the need to forward pleadings to his legal assistance provider, cannot be avoided." Doc. Ent. 14 at 5.

movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a).

With respect to supporting factual positions, Fed. R. Civ. P. 56 provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Fed. R. Civ. P. 56 further provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

Fed. R. Civ. P. 56(c)(4) ("*Affidavits or Declarations.*").  Also, it states:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> | | |
> |---|---|
> | (1) | give an opportunity to properly support or address the fact; |
> | (2) | consider the fact undisputed for purposes of the motion; |
> | (3) | grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it; or |
> | (4) | issue any other appropriate order. |

Fed. R. Civ. P. 56(e) ("Failing to Properly Support or Address a Fact.").

**E.**     **Analysis**

**1.**     **42 U.S.C. § 1997e ("Suits by prisoners")**

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such ***administrative remedies*** as are ***available*** are ***exhausted***."  42 U.S.C. § 1997e(a) ("Applicability of administrative remedies") (emphasis added).

In *Woodford v. Ngo*, 548 U.S. 81 (2006), the United States Supreme Court considered "whether a prisoner can satisfy the Prison Litigation Reform Act's exhaustion requirement, 42 U.S.C. § 1997e(a), by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" and held that "***proper*** exhaustion of administrative remedies is necessary." *Woodford*, 548 U.S. at 83-84 (emphasis added).  The following year, in *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court explained:

> In *Woodford*, we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," - rules that are defined not by the PLRA, but by the prison grievance process itself.  ***Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust."***  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones*, 549 U.S. at 218 (internal citations omitted) (emphasis added).

## 2.    Peterson's July 2011 Grievance (ARF-11-07-2790-28b)

On July 26, 2011, plaintiff completed a Step I grievance form (ARF-11-07-2790-28b).  Although difficult to read, plaintiff appears to have written:

> Officer Hall and officers was at panel (control)[.] I was shutting my door[.] It was lock down time 10:45 a.m.

> Officer on duty Hall and all.  On [July 26, 2011] a few officers I know Hall was working.  I had just returned to my room for lockdown 10:45 a.m.[.] My hand on [illegible][.] I [said] I was closing my door[.] The officer went out of his way and open[ed] my door more[,] smashing my hand.  My hand was hurt and bleeding.

Doc. Ent. 12-4 at 3.  Grievance Coordinator J. Eaton's grievance rejection letter is dated July 27,

2011, as is ADW Chapman's review, which stated in part:

> Your grievance is being rejected and returned to you for one of the following
> reasons, which are vague, illegible or it contains multiple unrelated
> issues/extraneous information, or raises issues that are duplicative of those raised
> in another grievance/filed by the grievant[,] [p]er PD 03.02.130.  Grievance is
> unclear as to what the main issue is or who you are grieving.  Grievances need to
> be clear and concise, as to who, what, when, where, why and how.
> . . .
> It is unclear as to who you talked to about this issue that is most directly involved.
> You need to be clear and concise and to who you are grieving, who you talked to
> and what happened.

Doc. Ent. 12-4 at 2.

Plaintiff completed a Step II grievance appeal form on August 2, 2011.  Although it is

difficult to read, plaintiff appears to have stated:  "Officer Hall and other officers working the day

shift of [July 26, 2011] intentionally smashed my hand in the door frame.  My hand is still numb.

The nurse said that [i]t was a pinch[ed] nerve.  I would like to [illegible]."  Doc. Ent. 12-5 at 3.

Deputy Warden McRoberts's August 8, 2011 Step II prisoner grievance response states:

> Prisoners grievance is illegible, and I am unable to discern who he discussed the
> issue with ie: Block Sgt, Arus, RUM etc.  There are numerous supervisors located
> in units 4-5 at al times, therefore contact with a supervisor regarding a dispute is
> always possible.  If the prisoner has difficulty writing, he should seek assistance
> from a staff person in the housing unit.  PD 03.02.130, section G-1 indicates that a
> grievance can be denied if it is illegible, or if the prisoner failed to discuss the
> issue with a staff person at the time of the incident.

Doc. Ent. 12-5 at 2.

At some point, plaintiff completed a Step III grievance appeal.  Here, too, it is difficult to

read, but plaintiff appears to have written: "I feel at this time this was a[n] act of [illegible]

officers intentionally smashed my hand in [the] door frame, and it is still damaged[.] I want

7

discipline taken[.]" Doc. Ent. 12-5 at 3.  The October 20, 2011 Step III grievance response upheld

the Step II rejection:

> Your Step III grievance, including any materials included with your appeal from
> Step II, have ben fully reviewed and considered by the Grievance and Appeals
> Section of the Office of Legal Affairs in accordance with PD 03.02.130,
> "Prisoner/Parolee Grievances".  The responses you received at Steps I and II
> reflect that your issues were in fact considered and appropriately rejected at the
> facility level.  As there is no additional information or basis found for relief at Step
> III, the Step II rejection is upheld.

Doc. Ent. 12-6 at 2.[8]

### 3.    Peterson's November 22, 2011 Complaint

In his November 22, 2011, unsigned complaint, Peterson states as follows:

1.    On July 26, 2011, [I was] a resident at [ARF] locking in unit-5 cell 224.
      On this date[,] I went to [O]fficer Hall, a first [s]hift (6:00 a.m. to 2:00
      p.m.) Officer, who was working the unit control panel and asked him to
      open my cell.

2.    After entering the cell, I grabbed the cell door handle-slot to close the cell
      door, and in my attempt to close the door [O]fficer Hall intentionally
      opened the cell door wider trapping my right hand between the door and
      door track causing excruciating pain.

3.    I leaned my head out of the cell door and loudly calling [O]fficer Hall's
      name and telling him that my hand was trapped in the door.

4.    Officer Hall looking directly at me and laughing.

5.    Officer Hall willfully kept my hand trapped in between the cell door and
      door track for approximately fifteen (15) to twenty (20) seconds before
      closing the door and releasing my hand.

6.    After my hand was released, I looked at my hand and notice[d] that blood
      [was] streaming down my right hand from my middle/index finger.

---

[8]According to a memorandum dated December 29, 2011, the only Step III grievance appeals
filed by Denard Peterson (#347506) for the period 1999 - present are ARF-11-07-2790-28b, received
on August 23, 2011, and ICF-10-12-3068-28a, received on March 9, 2011.  Doc. Ent. 12-3.

7.      With the cell door still opened, I immediately informed [O]fficer Hall that my finger was bleeding and needed medical assistance.  Officer Hall closed the cell door without any response.

8.      Hours later, on this same day, a nurse appeared at the cell door requesting to see my hand.  Showing her my right hand the nurse ordered [O]fficer Hall the cell door opened.  The nurse then administered medical treatment by cleaning the finger and bandaging it.

9.      Due to this malicious act by [O]fficer Hall[,] I have sustained permanent ligament damage to my right index/middle finger and a fear of closing the cell door when [O]fficer Hall is working the control panel.

10.     Prior to the filing of this complaint, I exhausted the grievance process, and was denied at the third-step on October 20, 2011.

Doc. Ent. 1 at 3-4 ¶¶ 1-10.

Plaintiff seeks an award of punitive damages more than $10,000.00 and an award of nominal damages, in an amount seen as appropriate by the Court.  Doc. Ent. 1 at 5.

**4.      Hall's January 23, 2012 arguments**

Defendant Hall's dispositive motion argues that plaintiff Peterson's complaint should be dismissed, because Peterson's grievance "regarding his Complaint allegations was rejected for being illegible."  Doc. Ent. 12 at 4, 7.

Specifically, defendant Hall argues that Peterson "has not *properly* exhausted because his grievance was rejected."  Doc. Ent. 12 at 10-12 (emphasis added).  In sum, Hall contends that "Peterson's decision not to submit new legible grievance, but to appeal the rejection of his grievances through the remaining steps, demonstrated a failure to complete the administrative process in accordance with the prison grievance procedures."  Doc. Ent. 12 at 11.  In making this statement, Hall relies upon *Burnett v. Howard*, No. 2:09-cv-37, 2010 WL 1286256, 1 (W.D. Mich. Mar. 30, 2010) ("As long as the state clearly rejects a grievance for a reason explicitly set

9

forth in the applicable grievance procedure, 'a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust.'") (quoting *Grear v. Gelabert*, No. 07-cv-203, 2008 WL 474098, at *2 n. 1 (W.D.Mich. Feb.15, 2008)).  It is Hall's position that Peterson has not properly exhausted his available administrative remedies as set forth in *Woodford v. Ngo*, 548 U.S. 81(2006) and *Jones v. Bock*, 549 U.S. 199 (2007).  Doc. Ent. 12 at 11-12.

In conclusion, Hall asserts that "Peterson has failed to properly exhaust his claim by following each step of the grievance process."  Doc. Ent. 12 at 12.

## 5.    Plaintiff's March 9, 2012 response

In his affidavit, plaintiff repeats some of the allegations made in his complaint.  *Compare* Doc. Ent. 1 ¶¶ 1-8, Doc. Ent. 16 at 1-2.  Plaintiff then asserts that Nurse Clarke informed him that he had "sustained (permanent) ligament damage to [his] right hand index/middle."  Doc. Ent. 16 at 2.  Then, plaintiff explains:

> On the eve of July 26, 2011, I tried to properly file a grievance against Officer Hall, but on July 27, 2011, the grievance coordinator returned the grievance to me claiming my grievance was vague/illegible/extraneous.  Not knowing what this mean[s], I asked the unit officer (whose name I can't recall) what did this mean. The officer said, "your hand writing is a piece of trash."  On this day of July 27, 2011, I asked to see the unit [ARUS] Mr. Wade for assistance, but was denied[.] I also tried to get some assistance from Dr. Denza, my Psychiatri[st].  Not being able to receive any assistance from [ARUS] Wade or Dr. Denza, my Psychiatri[st], I requested a step-2 grievance appeal form and appealed the grievance . . . through the third step.

Doc. Ent. 16 at 2.  Furthermore, plaintiff attests, "I, Denard Person, am a mentally ill prisoner and a patient in the Residential Treatment Program (RTP) at [ARF], do not know how to properly

write or read that well[.] I do know what happened to me and have asked the Legal Writer Program to help me explain what happened."  Doc. Ent. 16 at 2.[9]

In response to defendant's motion, plaintiff contends that Hall is not entitled to dismissal or summary judgment.  Doc. Ent. 16 at 7-9.  Peterson contends he was "physically abused by Correctional Officer Eric Hall's willful malicious intent."  According to Peterson, "he was deemed crazy for wanting to file a grievance and no assistance was rendered."  It is Peterson's position that he "had no other recourse except to try [and] file the grievance to the best of his mental capacity."  Peterson also states:

> This Court should recognize that, it is a well known practice that prison staff's will not assist prisoners in the filing [of] a grievance against another prison staff member, which may result in a civil action.  This is especially true with mentally ill prisoners.  Such an expectation is an unreasonable request by prisoners.  After exhausting his remedies and [having been] denied, petitioner sought assistance from the [ARF] Legal Writer Program.  Legal writers are barred from assisting in the filing of grievances[;] however, the petitioner has made his claim legible through the Legal Writer Program.

Doc. Ent. 16 at 8.

---

[9]MDOC PD 05.03.116 ("Prisoners' Access to the Courts"), effective July 21, 2008, states the following about legal assistance:

> In addition to legal assistance available in the community from attorneys and legal service organizations, prisoners shall have access to legal research materials through law libraries and provided legal assistance through the Legal Writer Program as set forth below. To avoid exploitation of prisoners by other prisoners, prisoners are prohibited from directly or indirectly charging or receiving compensation in any form, including in money, goods, or services, for providing legal services to, or obtaining legal services from, another prisoner.

*Id*. ¶ N.  The Legal Writer Program is described at ¶¶ P-T.  Among other things, this area of the policy directive provides, "[a] prisoner is eligible to receive Legal Writer Program services if s/he meets any of the following criteria: . . . [h]as a documented physical or mental impairment or a learning disability which may affect his/her ability to use the law library to prepare and file a legible and coherent pleading."  *Id*. ¶ Q.3.

Furthermore, Peterson contends that the Court "should also recognize that the statute [42 U.S.C. § 1997e(a)], prisoner grievance procedure [MDOC PD 03.02.130 ("Prisoner/Parolee Grievances")], or the PLRA [Prison Litigation Reform Act of 1995] does not make[] any provisions for mentally ill prisoner[s], and the [MDOC] [bars] prisoners from assisting other prisoners in the filing of a grievance, and will be subjected to a major misconduct for 'interfering with administrative rules'." Doc. Ent. 16 at 8-9. Thus, Peterson contends, he "made every attempt in getting help to rewrit[e] the grievance in order to properly exhaust the grievance procedures." In other words, Peterson contends that the Court should "exercise its discretion by concluding petitioner has met the PLRA and prison grievance requirements with the clarification of petitioner's grievance[.]" Doc. Ent. 16 at 9.

**6.    Conclusion**

The Court should deny defendant Hall's January 23, 2012 dispositive motion (Doc. Ent. 12), because plaintiff has raised a genuine issue of material fact as to whether plaintiff should be excused from properly exhausting his administrative remedies.

To be sure, "[a] plaintiff's failure to exhaust cannot be excused by his ignorance of the law or the grievance policy." *Napier v. Laurel County, Ky.*, 636 F.3d 218, 222 n.2 (6th Cir. 2011) (citing cases). And, "'so long as some remedy remains available, failure to exhaust is not excused.'" *Chavis v. Goord*, 333 Fed.Appx. 641, 643 (2d Cir. 2009)(quoting *Ruggiero v. County of Orange*, 467 F.3d 170, 177 (2d Cir.2006)); *see also Davis v. New York*, 311 Fed.Appx. 397, 399-400 (2d Cir. 2009) ("because administrative remedies were, in fact, available to Davis, defendants are not estopped from raising their exhaustion defense. Further, because Davis failed to avail himself of the available remedies and to plead 'special circumstances' warranting an

12

exception from the exhaustion requirement, we conclude that his excessive force claim was properly dismissed.").

However, the circumstances of this case require the Court to determine whether the prison grievance procedure became ***unavailable*** as an administrative remedy when plaintiff asked for and did not receive assistance, thereby excusing plaintiff's need to ***properly*** exhaust.[10]

As noted above, plaintiff's July 26, 2011 Step I grievance was rejected on the bases that it was "unclear as to what the main issue is or who you are grieving[,]" and "unclear as to who you talked to about this issue that is most directly involved." Doc. Ent. 12-4 at 2. MDOC PD 03.02.130 requires that the grievance be legible. For example, the policy generally provides:

> Prisoners and parolees are required to file grievances in a responsible manner. A grievance shall be rejected by the Grievance Coordinator if it contains profanity, threats of physical harm, or language which demeans the character, race, ethnicity, physical appearance, gender, religion, or national origin of any person, unless it is part of the description of the grieved behavior and is essential to that description. A grievance also may be rejected for any of the following reasons:
>
> 1.     It is vague, ***illegible***, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant.

---

[10] *See*, *i.e.*, *Watson v. Hughes*, 439 Fed.Appx. 300, 302 (5th Cir. 2011) ("his argument that he should be excused from the exhaustion requirement because he was told grievance forms were unavailable is also unavailing: He does not contend that grievance forms were unavailable for the remaining fourteen days of the period for submitting a Step 1 grievance."); *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010) ("The Warden's mistake and the BOP's subsequent failure to correct that mistake undermined all three benefits of the proper exhaustion requirement. Nunez made every effort to make full use of the prison grievance process, but was stymied by the error[,]" and "the Warden's mistake rendered Nunez's administrative remedies effectively unavailable, and that his failure to exhaust them is excused."); *Sapp v. Kimbrell*, 623 F.3d 813, 817 (9th Cir. 2010) ("although improper screening may excuse a failure to satisfy the PLRA's exhaustion requirement, the facts here do not show that prison officials improperly screened out Sapp's administrative grievances."); *Williams v. Hull*, No. 08-135Erie, 2009 WL 1586832, 6 (W.D. Pa. June 4, 2009) ("The record is clear that Plaintiff did not receive the requested gr[iev]ance form in order to complain about the quality of the food. The denial of a grievance form in this regard makes the administrative remedy process unavailable to Plaintiff on this issue and therefore, his failure to exhaust will be excused.").

13

2.    The grievant is on modified access pursuant to HH through LL and has filed a grievance in violation of those paragraphs.

[3].    The grievant did not attempt to resolve the issue with the staff member involved prior to filing the grievance unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration.

[4].    The grievance is filed in an untimely manner. The grievance shall not be rejected if there is a valid reason for the delay; e.g., transfer.

MDOC PD 03.02.130, effective July 9, 2007, ¶ G (emphasis added).  Furthermore, with respect to

the grievance process, the policy states:

A grievant shall use a Prisoner/Parolee Grievance (CSJ-247A) to file a Step I grievance; a Prisoner/Parolee Grievance Appeal (CSJ-247B) shall be used to file a Step II or Step III grievance. The forms may be completed by hand or by typewriter; however, handwriting must be *legible*. The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included. Information should be confined to the form and not written on the back, sides, or margins of the form, or in the response area. Additional pages may be attached to the grievance form if necessary to provide required information; however, grievants are encouraged to limit the information to the grievance form itself. If additional pages are necessary, the grievant is to submit four copies of each additional page; grievance forms should not be used for this purpose.

*Id*. ¶ R (emphasis added).

It does not appear that this policy addresses what to do if the grievant is illiterate or

mentally impaired.  However, the policy does provide that "Wardens and FOA Area Managers

shall ensure prisoners and parolees are provided assistance in completing a grievance form, if

needed.  In such cases, assistance shall be provided by a staff member who is not involved in the

grievance." *Id*. ¶ M.

By his March 9, 2012 response, plaintiff has raised a genuine issue of material fact as to

whether he should be excused from properly exhausting his administrative remedies based upon

14

his attempt to invoke the protections of MDOC PD 03.02.130 ¶ M.  Specifically, plaintiff's March 9, 2012 filing includes a notarized March 7, 2012 affidavit (Doc. Ent. 16 at 1-2), wherein plaintiff asserts that, after receiving the July 27, 2011 rejection of his Step I grievance, plaintiff asked the unit officer what was meant by the response and was told the handwriting was trashy; plaintiff asked to see ARUS Wade for assistance but was denied; and he also tried to get assistance from Dr. Denza.  Doc. Ent. 16 at 2.

In other words, plaintiff attests that he sought help of the type described in MDOC PD 03.02.130 ¶ M.  And, while plaintiff's response does not attest that Hall himself was responsible for the apparent failure to accommodate plaintiff's request for assistance, defendant Hall has not filed a reply.  Thus, defendant Hall does not rebut plaintiff's claim that he sought assistance.  Nor does he allege that plaintiff did not follow any appropriate procedure for requesting such assistance.  Indeed, the PD does not appear to establish a procedure for requesting such assistance.

For these reasons, there is a genuine issue of material fact as to whether plaintiff should be excused from "properly exhausting" his administrative grievances.  *See*, *i.e.*, *Braswell v. Corrections Corp. of America*, 419 Fed.Appx. 622, 626 (6th Cir. 2011) ("the existing record does not permit a conclusion that the remedies Horton failed to exhaust were available to him for purposes of § 1997e(a).  As the district court found, there is a material factual dispute as to whether CCA's grievance process was available to Horton during his confinement at the detention facility and after his transfer to the special needs facility."); *Fontenot v. Global Expertise In Outsourcing*, 232 Fed.Appx. 393, 394 (5th Cir. 2007) (where plaintiff had physical and mental disabilities, the Court stated, "[a]ssuming arguendo that the administrative process was not

available to Fontenot while he could not find someone to assist him, he is not excused from the exhaustion requirement because he did not file a grievance once he found an inmate willing to help him, prior to filing a § 1983 suit[,]" and "[f]utility is not an exception to the exhaustion requirement."); *Ramos v. Smith*, 187 Fed.Appx. 152, 154 (3d Cir. 2006) ("With respect to his illiteracy, the District Court correctly noted that the warden is required to give an illiterate inmate the assistance required to prepare and file an appeal. 28 C.F.R. § 542.16(b). Ramos does not claim that he asked for and was refused assistance in filing his administrative appeals. We agree with the District Court that this will not excuse his failure to exhaust."); *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) ("Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy "unavailable" and a court will excuse the prisoner's failure to exhaust[,]" and "Mr. Little asserted his right to a vegan diet at every level of the administrative process. To the extent that Mr. Little asserted additional issues in his grievance appeal, the ARA was authorized to ignore them and address only the merits of the diet issue. It was not, however, authorized to reject his grievance appeal in toto. Because the ARA exceeded its authority when it rejected Mr. Little's grievance appeal, it rendered that final step of exhaustion unavailable. Accordingly, we excuse Mr. Little's failure to exhaust administrative remedies regarding his claim to a vegan diet as part of his religious practices and hold that the district court erred in dismissing his complaint.").

Here, the Court should render a decision akin to the Seventh Circuit's in *Kincaid v. Sangamon County*, 435 Fed.Appx. 533 (7th Cir. 2011):

> Nonetheless, we think that Kincaid's brief sufficiently alleges that, if he did not exhaust, administrative remedies were unavailable to him, and thus not mandatory, both during and after his medical emergency. *See* 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 93[] (2006). Based on his allegations, it is plausible, *see*

16

*Ashcroft v. Iqbal*, 556 U.S. 662[] (2009), that at least two impediments made a timely grievance impossible. The threat from the superintendent that Kincaid and his family needed to "shut the fuck up" may have intimidated Kincaid and rendered the grievance process unavailable to him. *See Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir.2008); *Kaba v. Stepp*, 458 F.3d 678, 686 (7th Cir.2006); *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir.2004). And Kincaid's incapacity could also have made the jail's administrative process unavailable, especially in the midst of his ongoing medical emergency. Physical incapacity can be a valid reason for a delay in filing a grievance, *see Hurst v. Hantke*, 634 F.3d 409, 411–12 (7th Cir.2011); *McCoy v. Gilbert*, 270 F.3d 503, 510 (7th Cir.2001), and when the need for assistance is urgent, an impediment to grieving can render the process entirely unavailable, *see Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1173 (7th Cir.2010). Accordingly, to the extent that Kincaid has acknowledged on appeal that he did not exhaust during the normal time frame, he has adequately alleged plausible excuses for his conduct to proceed on his complaint.

> **We recognize that a more complete examination of the facts may show that administrative remedies were in fact available to Kincaid and that his failure to exhaust is not excused. But those are details that should be developed in a factual record if the defendants raise exhaustion as a defense.** *See Pavey [v. Conley]*, 544 F.3d at 742–43 [(7th Cir. 2008)]. Accordingly, we VACATE and REMAND for further proceedings consistent with this decision.

*Kincaid*, 435 Fed.Appx. at 536-537 (emphasis added).[11]

---

[11]*See also Dillon v. Rogers*, 596 F.3d 260 (5th Cir. 2010). In *Dillon*, plaintiff argued that there was no available remedy for a 90 day period after the alleged abuse and that "his failure to exhaust should be excused on the basis of estoppel or the 'special circumstances' surrounding his detention at Jena [a temporary facility]." *Dillon*, 596 F.3d at 266.

The Fifth Circuit concluded that "[d]ue to the fragmentary nature of the record, we direct the district court to permit Dillon to conduct discovery concerning exhaustion and the availability of administrative remedies." *Dillon*, 596 F.3d at 269. Furthermore, the Court then concluded that "[a]ppellees [we]re not estopped from raising exhaustion as an affirmative defense." Id. at 270.

Then, in its direction to the district court on how to "resolve disputes pertaining to exhaustion of administrative remedies[,]" the Court stated that "factual disputes concerning exhaustion may be resolved by judges." *Id*. at 270-271. The Court further provided the following summary: "If the plaintiff survives summary judgment on exhaustion,[] the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary. Then, if the judge determines that the plaintiff has exhausted administrative remedies or that his or her failure to exhaust should be excused, the case may proceed to the merits[,]" noting that "[i]n many cases, the judge will be able to rule on exhaustion without allowing any discovery. However, in some cases, unique circumstances may arise that necessitate allowing some discovery prior to ruling, such as where the availability of administrative remedies is contested." *Id*. at 273.

Here, plaintiff's affidavit attests to plausible impediments to his ability to file a legible grievance - that he is mentally impaired and basically illiterate and that he was denied assistance when he sought it.  Doc. Ent. 16 at 2.  These attestations are unrebutted by defendant Hall.

## III.   <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 7/2/2012

18

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 2, 2012.

s/Susan Jefferson
Case Manager